# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CUSTOM HOSPICE, LLC<br><br>Address:<br>888 W. Big Beaver Road #900<br>Troy, MI 48084<br><br>    Plaintiff,<br><br>v.<br><br>ROBERT F. KENNEDY, JR., SECRETARY<br>OF THE U.S. DEPARTMENT OF HEALTH<br>AND HUMAN SERVICES<br><br>Address:<br>200 Independence Avenue, SW<br>Washington, D.C. 20201<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.:<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR JUDICIAL REVIEW

Custom Hospice, LLC ("Custom"), by and through its undersigned counsel, hereby brings this action against Robert F. Kennedy, Jr. in his official capacity as Secretary of the U.S. Department of Health and Human Services ("Secretary"), and alleges as follows:

## INTRODUCTION

This action is brought under the Medicare Act, 42 U.S.C. § 1395oo(f)(1), and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, to obtain judicial review of a final decision of the Provider Reimbursement Review Board ("PRRB" or "Board"), an administrative tribunal that adjudicates disputes between providers of Medicare services and the federal government. Custom seeks relief from the Board's final decision dated April 25, 2025, which denied reinstatement of Custom's administrative appeal as to Board case number 25-4148 and

thereby dismissed Custom's Medicare reimbursement appeal on arbitrary and capricious procedural grounds. Absent judicial intervention, the Secretary's decision will deprive Custom of its statutory right to a hearing on the merits of its reimbursement claim. Custom requests that this Court set aside the Board's decision as unlawful and order the Secretary to reinstate Board case number 25-4148 for adjudication on the merits, along with costs of suit and such other relief as the Court deems just and proper.

## JURISDICTION AND VENUE

1. This action arises under Title XVIII of the Social Security Act, as amended, 42 U.S.C. §§ 1395-1395ggg ("Medicare Act").

2. This Court has jurisdiction under 42 U.S.C. § 1395oo(f)(1), which authorizes a provider to obtain judicial review of a "final decision" of the Board by commencing a civil action in federal district court. The Board's denial of Custom's reinstatement request constitutes the Secretary's final administrative decision in this matter. This action also arises under federal law (the Medicare Act and Administrative Procedure Act), such that jurisdiction is proper under 28 U.S.C. § 1331.

3. Venue is proper in the U.S. District Court for the District of Columbia pursuant to 42 U.S.C. § 1395oo(f)(1) and 42 C.F.R. § 405.1877(e). The Medicare statute and regulations expressly permit a provider to bring an action for review of a Board decision either in the judicial district where the provider is located or in the District of Columbia.

4. Custom has satisfied all prerequisites for judicial review. The PRRB decision at issue was received by Custom on April 30, 2025, and thus this Complaint is being timely filed within 60 days of receipt of the final Board decision, consistent with 42 U.S.C. § 1395oo(f)(1) and 42 C.F.R. § 405.1877(b). Additionally, the amount in controversy in the underlying reimbursement

dispute exceeds $10,000, as required by 42 U.S.C. § 1395oo(a).

## PARTIES

5. Custom is a limited liability company and Medicare-certified provider of hospice services with its principal place of business located in Troy, Michigan. At all times relevant hereto, Custom has participated in the Medicare program, which is administered by the Centers for Medicare & Medicaid Services ("CMS"). CMS is an agency within the U.S. Department of Health and Human Services ("HHS"). Custom filed the administrative appeal at issue to contest a Medicare reimbursement determination reducing its payments for hospice services by four percent for the Fiscal Year (FY) 2025, as explained below.

6. Robert F. Kennedy, Jr. is the Secretary of HHS and is sued in his official capacity. The Secretary, through CMS, is responsible for administering the Medicare program and for implementing and overseeing the provider appeal process established by 42 U.S.C. § 1395oo. The Board is an adjudicative body within HHS that hears provider reimbursement appeals, and the Secretary (through delegation to the CMS Administrator) has the authority to review Board decisions. For purposes of this action, the Secretary is the proper defendant under 42 U.S.C. § 1395oo(f)(1).

## FACTUAL AND PROCEDURAL BACKGROUND

### CMS' Hospice Quality Reporting Program

7. Medicare covers reasonable and necessary hospice services furnished to beneficiaries who are terminally ill. *See* 42 U.S.C. § 1395f(a)(7).

8. As a condition of enrollment in Medicare, CMS requires hospices to participate in the Hospice Quality Program ("HQRP"). The HRQP is a Congressionally mandated program that authorizes the Secretary to establish quality reporting requirements for hospices and requires the

Secretary to publicly report quality measures that relate to the care provided by Medicare-participating hospices. *See* 42 U.S.C. § 1395f(i)(5).

9. Under the HRQP, hospices must assess patients using a standardized tool developed by CMS called the Hospice Item Set ("HIS"). *See* 42 C.F.R. § 418.312(b)(1).

10. Hospices are required to submit HIS data to CMS on an ongoing basis. Generally, hospices must report HIS data to CMS after completion of a patient's admission assessment and upon completion of a patient's discharge assessment.

11. CMS requires that hospices submit ninety percent (90%) or more of their HIS data in each calendar within 30 days after completion of the admission and discharge assessments. If a hospice fails to meet this submission timeliness threshold, its Medicare payments will be reduced by four percent (4%) during a subsequent fiscal year.

12. CMS regulations permit hospices to file requests for extensions of time to submit HIS data. *See* 42 C.F.R. § 418.312(i). CMS may approve such requests in its discretion. All CMS-approved extensions will be factored into the hospice's compliance threshold for HIS reporting at the conclusion of each calendar year.

**Medicare Reimbursement Appeals and Relevant Board Procedures**

13. In the event that CMS determines a hospice has failed to satisfy the ninety percent reporting threshold for a calendar year, it will notify the hospice. Upon receipt of such a determination, the hospice may file an appeal with CMS called a request for reconsideration. *See* 42 C.F.R. § 418.312(h).

14. If the hospice is dissatisfied with the results of the reconsideration process, it may request a hearing before the Board so long as: (i) the provider files a request for a hearing within 180 days of receiving the final determination; (ii) the amount in controversy is $10,000 or more in

the case of an individual appeal; and (iii) the provider has complied with any applicable procedural requirements. Congress, through the Medicare Act, guarantees Medicare providers the right to administrative review of disputed reimbursement decisions, so long as the provider timely appeals and meets the minimal amount-in-controversy threshold. 42 U.S.C. § 1395oo.

15. The Board's procedures for handling appeals are established by regulations set forth in 42 C.F.R. Part 405, Subpart R as well as the Board's own rules. After a provider files an appeal request, which is referred to as an "Issue Statement," the Board will docket the case and set schedules for the submission of position papers and a hearing. Federal regulations require that an appeal submission include certain information, including "a copy of the final contractor or Secretary determination under appeal."

16. The Board's rules likewise enumerate minimum filing requirements for an appeal. If a provider's initial appeal filing fails to include a required document such as the final determination, the Board may dismiss the case for failure to meet the filing requirements.

17. The Board may, however, reopen or reinstate a dismissed appeal upon a showing of good cause. In particular, 42 C.F.R. § 405.1885 authorizes the Board to reopen its decisions "by granting the request of the provider affected by the determination", and Board Rule 47.3 permits reinstatement of a case "dismissed for failure to comply with Board procedures" upon written motion demonstrating good cause.

18. Board Rule 47.3 further provides that if a dismissal was for failure to file a required document, the provider must include the missing filing with its reinstatement motion as a prerequisite for consideration.

19. A party dissatisfied with a Board decision may request review of that determination by the CMS Administrator. The Administrator may affirm, modify, or reverse the Board's decision

or decline to review the decision.

### Custom's Appeal and Subsequent Dismissal by the Board

20. In 2023, Custom learned of an issue that affected the timeliness of its HIS submission data in late 2022 and 2023. On October 30, 2023, Custom asked CMS to extend the deadlines for the affected submissions.

21. On November 1, 2023, CMS notified Custom that it had approved the extension request.

22. CMS, by way of a letter dated July 1, 2024, notified Custom that it had allegedly failed to submit 90% or more of its HIS data on a timely basis for calendar year 2023. CMS further stated that it would reduce Custom's Medicare reimbursement by 4% for fiscal year 2025 as a penalty for the alleged non-compliance.

23. On July 31, 2024, Custom filed a reconsideration request contesting the finding of non-compliance and the proposed reimbursement penalty. CMS subsequently issued an unfavorable notice of reconsideration dated September 30, 2024.

24. On March 26, 2025, Custom filed an Issue Statement with the Board challenging the unfavorable reconsideration decision. Custom disputed this penalty as erroneous, believing that CMS miscalculated or misclassified Custom's HIS data submissions and failed to fully account for the previously-approved extension. The sole issue raised by Custom in its appeal to the Board was the validity of the 4% reduction to its Medicare reimbursement, which Custom estimates will cause a loss of more than $270,000 in Medicare revenue for fiscal year 2025.

25. In its March 26, 2025 Issue Statement submitted through CMS' Office of Hearings Case and Document Management System ("OH CDMS"), Custom identified the final determination being appealed as a CMS Reconsideration Decision dated September 30, 2024,

which was the CMS decision imposing the 4% payment reduction for FY2025.

26. Custom's Issue Statement expressly referenced the September 30, 2024 determination by date multiple times and explained Custom's dissatisfaction with that determination, thereby accurately summarizing all information needed to invoke the Board's jurisdiction (i.e. identity of the final determination, amount in controversy, and timeliness within 180 days).

27. Due to an inadvertent filing error, however, the reconsideration decision included with Custom's Issue Statement was incorrect; Custom's counsel mistakenly attached a copy of a prior reconsideration decision dated October 13, 2023 concerning a notice of non-compliance issued by CMS for Custom's HIS data submissions during the previous calendar year. In essence, Custom's appeal inadvertently included the wrong supporting exhibit, even though the narrative of the Issue Statement clearly described the correct 2024 determination at issue. This mistake was a good-faith oversight—essentially a clerical "mis-click" in selecting the file to upload—and Custom made it clear through all of its submissions to the Board that it intended to appeal the September 30, 2024 determination concerning the fiscal year 2025 reduction to its Medicare payments.

28. By letter dated April 14, 2025, the Board notified Custom that it would dismiss Custom's appeal in its entirety on the ground that the appeal failed to meet the Board's filing guidelines.

29. The Board noted that a copy of the September 30, 2024 final determination was not included with the appeal, as allegedly required, and that the document submitted in its place did not correspond to the stated fiscal year under appeal. The Board therefore concluded that the appeal was incomplete. The Board's dismissal letter advised that Custom could request reinstatement

within three years pursuant to the Board's reopening authority under 42 C.F.R. § 405.1885 and Board Rule 47.

30.   Upon information and belief, the Board has or could obtain access to CMS reconsideration decisions rendered in cases such as these. Moreover, National Government Services, the Medicare contractor designated to represent CMS' position in this case before the Board, has access to CMS reconsideration decisions in cases such as these.

### Custom's Motion for Reinstatement

31.   On April 18, 2025, Custom promptly filed a Motion for Board Reconsideration and Reinstatement of Board case number 25-4148. In its motion, Custom provided the correct copy of the September 30, 2024 reconsideration determination as an attachment, thereby fully curing the filing defect that had prompted the dismissal. Custom explained that the omission of this document in the original filing was an innocent mistake and urged the Board to exercise its discretion to reinstate the appeal in the interests of fairness, consistent with the Board's rules and prior judicial decisions.

32.   In sum, Custom's April 18, 2025 motion demonstrated that the filing oversight was unintentional, promptly corrected, and excusable, and that no legitimate purpose would be served by refusing to reinstate the appeal. All substantive prerequisites for Board jurisdiction were met, and the public policy of resolving Medicare disputes on their merits strongly favored allowing the case to proceed.

33.   Custom's request for reinstatement fell squarely within the Board's reopening authority and demonstrated "good cause" under the Board's rules, given that Custom was not at fault in any egregious sense but rather made a common clerical error that caused no harm. Custom explained that numerous factors—lack of prejudice, timely correction, the important rights at

stake—weighed in favor of reinstatement. At bottom, Custom asked only for the opportunity that the Medicare statute promises: a fair hearing on a reimbursement dispute that could be resolved in its favor, rather than a draconian forfeiture of appeal rights due to a trivial paperwork mistake.

34. By letter dated April 25, 2025, the Board denied Custom's request to reinstate the appeal. The April 25 decision (the "Board Decision") is the final agency action that Custom now challenges in this Court. **Exhibit A**. In its letter, the Board acknowledged that Custom's representative had cured the defect by submitting the missing September 30, 2024 determination with the motion but otherwise concluded that this did not entitle Custom to reinstatement of its appeal.

35. The Board concluded that it had "properly exercised its authority under 42 C.F.R. § 405.1868(b) to dismiss the case" initially and thereby "decline[d] to exercise its discretion to reinstate Case No. 25-4148."

36. The Board expressly found that Custom's representative "failed to establish good cause" under Rules 47.1 and 47.3 because the representative "admitted fault" in not including the correct document.

37. The Board disagreed with Custom's argument that providing the missing document should lead to reinstatement; instead, the Board asserted that curing the defect was only a "prerequisite" for consideration, not a guarantee of a favorable result.

38. The Board's determination was that Custom's case would "remain closed and off the Board's docket."

### Custom's Request for CMS Administrator Review

39. Custom, as a precaution, filed a request with the Administrator of CMS to review the Board's denial of reinstatement, pursuant to 42 C.F.R. § 405.1875.

40. The Administrator declined to take any review of the Board's decision by notice dated June 27, 2025. **Exhibit B**.

41. The Administrator's notice states that the Administrator "did not initiate review" of the Board's action in case number 25-4148, and it further confirmed that if Custom wishes to pursue judicial review, a civil action must be commenced within 60 days of receipt of the Board Decision, in accordance with 42 C.F.R. § 405.1877.

42. Accordingly, the Board's April 25, 2025 decision became the final decision of the Secretary for purposes of judicial review, as of the date the Administrator's review period expired. Custom now timely files this civil action to challenge that final decision.

## CAUSES OF ACTION

**Violations of the Administrative Procedure Act (5 U.S.C. § 706) and Medicare Act**

43. The Secretary's final decision to dismiss Custom's appeal and refuse reinstatement was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, and was unsupported by substantial evidence, in violation of the APA (5 U.S.C. § 706(2)(A), (2)(E)).

44. Under 42 U.S.C. § 1395oo(f)(1), this Court's review is governed by the standards of the APA, and the Court is empowered to "hold unlawful and set aside" the Secretary's decision if it fails to meet those standards.

45. In this case, the Court should set aside the Secretary's decision for the following reasons:

   I. <u>Failure to Consider Important Factors</u>: In refusing to reinstate Custom's appeal, the Board failed to properly take into account relevant factors and extenuating circumstances, and it acted inconsistently with the spirit of its own prior decisions and policies. The Board gave no meaningful weight to the absence of any intent by Custom to abandon its appeal, even

though it was clear that Custom diligently pursued its appeal and promptly corrected the filing mistake. Nor did the Board address the fact that Custom's oversight caused no delay or prejudice to the proceedings—the case was at a preliminary stage and the contractor had not been harmed in any way. By ignoring these critical factors of intent, prejudice, timing, and the interests of justice, the Board failed to engage in reasoned decision-making. A government agency must consider all "important aspect[s] of the problem" at hand; here, the Board focused only on counsel's error in isolation, while disregarding the equitable and practical considerations that overwhelmingly favored reinstatement. This one-sided approach renders the Secretary's final decision arbitrary and capricious.

    II. <u>Rigid and Inconsistent Application of Rules</u>: The Board's decision reflects a rigid, mechanical application of procedural rules that is at odds with both the Board's own established standards and past practices. The Board interpreted Rule 47.1/47.3 as a strict bar to reinstatement whenever a provider is "at fault" to any degree, equating an inadvertent clerical mistake with a lack of good cause. This interpretation is unreasonably inflexible and contrary to precedent that permits reinstatement of appeals to the Board when the provider has a justifiable excuse for oversights. The Board's process must balance efficiency with fairness, permitting reinstatement when the provider commits excusable neglect. By refusing to reinstate Custom's appeal despite a clear "justifiable excuse," the Board violated this principle. Moreover, the Board has not been consistent in its treatment of late filings in other cases. The Board does not always dismiss appeals or deny reinstatement when a filing is untimely or mistaken. In some instances, the Board has shown leniency or accepted late submissions, especially where no harm has been done. The Board's hardline stance in this case, without explaining why Custom's minor error deserved the ultimate sanction of dismissal, is arbitrary

in light of these inconsistencies. Agency discretion is not "unfettered"—the Board cannot apply its rules in an irrational, uneven way to reach a draconian result such as this.

III. <u>Form Over Substance Results in a Violation of Statutory Rights:</u> The Board's dismissal of Custom's appeal elevates form over substance in a manner that is inconsistent with the Medicare Act and governing law. Custom satisfied all the statutory prerequisites for a Board hearing: it filed a timely appeal, identified the final determination, and met the amount in controversy. These are the only requirements Congress imposed in 42 U.S.C. § 1395oo(a) for entitlement to a hearing. The requirement to attach a copy of the determination is found nowhere in the statute; it is an administrative requirement designed to facilitate the Board's process. It is not a jurisdictional bar mandated by Congress. By enforcing that technical requirement to the point of extinguishing Custom's statutory right to a hearing, the Board's decision deprives Custom of congressionally established appeal rights based on a form-over-substance requirement, which is arbitrary and unlawful. It is inconsistent with federal law and otherwise arbitrary and capricious for the Board to short-circuit a provider's appeal in this fashion. The Board's action here undermines the very purpose of § 1395oo, which is to give providers a fair opportunity to have reimbursement disputes heard on the merits. By treating a non-prejudicial paperwork omission as a ground for dismissal, the Board frustrated the policy of adjudicating claims on their merits, contrary to the intent of the Medicare Act.

IV. <u>Deprivation of Due Process and Fair Treatment:</u> The Secretary's decision, as carried out by the Board, denies Custom fundamental fairness and due process of law. The hearing rights granted to providers by statute carry with them an expectation of even-handed treatment in the administrative process. Yet the Board's rules (and their application here) impose harsh consequences on providers for procedural missteps, while CMS contractors that

oppose providers in reimbursement disputes before the Board face no comparable sanction for similar failures.

In fact, the Medicare regulations do not provide for a contractor's untimely submissions to result in dismissal of the contractor from the case, whereas a provider's untimely submission can doom the entire appeal. This asymmetry violates fundamental concepts of even-handedness and fairness inherent in due process. In Custom's case, the Board invoked its rule to punish the provider for a trivial error, without any consideration of leniency or lesser remedy, such as notifying Custom of the omission and allowing Custom to supplement the case file within a short period of time (which Custom immediately did after receiving the Board's dismissal). Such one-sided enforcement, where the provider loses its property interest in reimbursement for want of a document that was otherwise accurately described in its entirety in Custom's Issue Statement, is fundamentally unfair. The decision effectively penalizes Custom in an arbitrary and capricious manner that courts have found constitutes a denial of due process. Custom had a protected interest in its Medicare payments and a statutory entitlement to an appeal; stripping those things away on a hyper-technical basis violates due process and the APA.

V. <u>Lack of Substantial Evidence to Support Board's Decision:</u> The Board's refusal to reinstate the appeal is also not supported by substantial evidence on the record as a whole. An agency decision must articulate a rational connection between the facts found and the choice made. Here, the facts overwhelmingly favored reinstatement (as detailed in Custom's motion), yet the Board gave conclusory reasons for denial that do not survive scrutiny. For instance, the Board's determination hinged on labeling the mistake an "administrative oversight" by counsel, but this label alone does not constitute evidence that the appeal would pose any burden

or that the oversight was unworthy of forgiveness.

To the contrary, undisputed evidence showed Custom's filing contained the essential information about the case; the missing document was supplied immediately when notified, which the Board acknowledged receipt of; no party would suffer any harm by continuing the appeal; and the Board's own rules allow providers to cure such defects. The Board's decision failed to grapple with one of Custom's primary arguments that no prejudice resulted from the oversight and thus reinstatement would be harmless. By ignoring the lack of prejudice and other key facts, the Board did not adequately justify its decision. The Board's refusal to reinstate an appeal is not supported by substantial evidence where the Board completely failed to consider one of the provider's primary arguments for reinstatement. The same is true here. The Board brushed aside Custom's primary contentions and evidence (regarding prejudice and fairness, for example) rendering its decision unsupported by the full record. A decision that rests on a selective or incomplete view of the evidence is arbitrary and cannot stand.

VI. <u>Contrary to Precedent and Statute</u>**:** The Board's action was contrary to law in that it violated the letter and spirit of 42 U.S.C. § 1395oo and disregarded persuasive judicial precedents. Courts across multiple jurisdictions have warned the Board against dismissing provider appeals on trivial procedural grounds.

For example, in *Inova Alexandria Hospital*, the Fourth Circuit affirmed that a provider's appeal should not be dismissed if an excusable neglect is shown, emphasizing that the Board's interest in efficiency does not outweigh the provider's interest in a fair hearing. *Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342 (4th Cir. 2001).

In *Edgewater Hospital*, the court vacated a Board dismissal for failure to timely file a document, recognizing that the provider had met the statutory criteria and deserved a merits decision. *Edgewater Hosp., Inc. v. Bowen,* 857 F.2d 1123 (7th Cir. 1988).

And in *Univ. of Chicago Med. Ctr.*, the court held that a Board's dismissal of an appeal (and refusal to reinstate) under circumstances of a missed filing deadline was arbitrary and capricious, particularly where the provider had good cause and the Board failed to reasonably explain its action. *Univ. of Chi. Med. Ctr. v. Sebelius,* 56 F. Supp. 3d 916 (N.D. Ill. 2014).

These cases underscore a consistent principle: procedural guidelines should not be used as a trap to summarily dispose of Medicare providers' claims, especially when a provider's misstep is promptly corrected and the core requirements of the statute are fulfilled. The Secretary's decision in Custom's case flouts that principle and thus is contrary to the purpose of the Medicare statute.

46.     For all the foregoing reasons and others to be developed through briefing, the Secretary's final decision to dismiss Custom's appeal and deny reinstatement was arbitrary, capricious, unsupported by substantial evidence, and contrary to law. The decision must therefore be set aside under 5 U.S.C. § 706, and appropriate relief granted to restore Custom's Medicare appeal in front of the Board.

**PRAYER FOR RELIEF**

WHEREFORE, Custom respectfully prays that this Court enter judgment in its favor and grant the following relief:

1. A declaratory judgment that the Board's dismissal of Custom's appeal and its denial of reinstatement are null, void, and unlawful. Specifically, Plaintiff seeks a declaration that the Board's April 14, 2025 dismissal and April 25, 2025 refusal to reinstate the appeal were

arbitrary, capricious, and not in accordance with law.

2. An order compelling Defendant to reinstate (or causing the Board to reinstate) Custom's appeal as to Board case number 25-4148 and to review case on the merits in accordance with 42 U.S.C. § 1395oo.

3. Such other and further relief as the Court deems just and proper, including any other relief necessary to restore Custom's rights and to ensure that the Secretary's actions comply with law.

                                                Respectfully submitted,

Dated: June 29, 2025

/s/ Adam L. Bird
Adam L. Bird
D.C. Bar No. 1005485
**CALHOUN BHELLA & SECHREST LLP**
2121 Wisconsin Avenue N.W., Suite 200
Washington, D.C. 20007
Tel: (202) 804-6031
Fax: (214) 981-9203
abird@cbsattorneys.com

**Attorneys for Custom Hospice, LLC**